UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

LUZ GRANADOS,

                    Plaintiff,

        - against -

HARVARD MAINTENANCE, INC.,

                    Defendant.

------------------------------X



**MEMORANDUM AND ORDER**

05 Civ. 5489 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

        Plaintiff Luz Granados ("plaintiff" or "Granados"), an
office cleaner, has brought this action against her current
employer, Harvard Maintenance, Inc. ("defendant" or "HMI"),
which provides cleaning and maintenance services to commercial
properties.   Plaintiff alleges that defendant subjected her to
disparate treatment based on her race, age, national origin, and
gender and also retaliated against her in response to her
request for leave pursuant to the Family and Medical Leave Act
of 1993 ("FMLA") as well as her complaints of discrimination.
Defendant now moves pursuant to Fed. R. Civ. P. 12(b)(1) & (6)
to dismiss plaintiff's complaint.   For the reasons set forth
herein, defendant's motion is denied.

## **BACKGROUND**[1]

Plaintiff is a 54 year old Hispanic woman who has been employed as an office cleaner by HMI since 2002. Compl. at ¶ 6. Plaintiff asserts claims under the FMLA; the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq. (McKinney 2005); and the New York City Administrative Code, N.Y.C. Admin. Code § 8-107. Plaintiff alleges that she has been subjected to a hostile work environment and has suffered adverse employment actions based on her race, age, national origin, and gender. She also alleges that adverse actions were taken against her for requesting leave pursuant to the FMLA and in retaliation for her complaints of discrimination. Id. at ¶ 7.

### **I. Disparate Treatment and Harassment**

Plaintiff alleges that since 2003 and continuing to the present day, defendant has taken various actions against her which it did not take against other, similarly situated employees. Id. at ¶ 8. Specifically, plaintiff alleges that her male, Albanian supervisor, A1 (last name unknown), regularly used derogatory language in her presence. On a monthly basis, A1 referred to Hispanics as "Spic." On a weekly basis, he referred to plaintiff as "dumb Hispanic." Virtually every day, he referred to plaintiff as an "old, weak woman" and referred to

---

[1] The following facts are drawn from plaintiff's complaint and, as is appropriate when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), are assumed herein to be true.

2

older male employees as "old and weak." On July 20, 2003, in front of several other employees, Al allegedly called plaintiff an "old Mexican woman" and a "clown" while using plaintiff's work cart to imitate an old woman. Id.

In addition, plaintiff asserts that during weekly inspections, defendant regularly allows three to four Albanian employees to work together to clean sites of comparable size to those which it requires one Hispanic employee to clean alone. Plaintiff and other Hispanic employees allegedly are then reprimanded for failure to do as good a job as the Albanians, even when this is not the case. On July 10, 2003, plaintiff alleges that she alone was suspended without pay for failing to properly clean her assigned area despite the fact that two Albanian women were working on the same area with her. Id.

From 2003 until the present, plaintiff alleges that defendant has forced her to vacuum nearly every day, even though Albanian employees were not required to do so. Plaintiff at one point allegedly produced a doctor's note stating that she should refrain from vacuuming because it was causing damage to her hands. Irregardless, defendant did not assign an Albanian co-worker assigned to the same work area to vacuum but instead forced plaintiff to continue vacuuming. Id.

Plaintiff alleges that on several occasions she complained both to HMI management and to her union that defendant subjected

Hispanic employees to disparate treatment.    In response, she
alleges that she was told by management to "shut up and mind her
own business."    Plaintiff alleges that approximately twice a
month thereafter, defendant harassed her and threatened her
employment.    Id. at ¶ 9.

## II. FMLA Leave Request

On August 26, 2003, plaintiff requested two weeks of unpaid
leave (which she alleges was the equivalent of FMLA leave), as
well as two weeks of accrued vacation time in order to visit her
terminally ill father in Colombia.    Despite the fact that
plaintiff's union delegate, Paul Romero ("Romero"), had
"approved [her] paperwork" defendant denied the request.
Plaintiff alleges that Romero told her the request was denied
because she was Hispanic rather than Albanian.    Romero then
advised plaintiff to see Murat Mela ("Mela"), an Albanian who
was the Assistant Vice President of HMI.    Id. at ¶ 10.

Plaintiff alleges that when she went to Mela's office
accompanied by her husband, Mela allegedly told plaintiff that
she was a "troublemaker" and that she was "now going to be on
[Mela's] troublemakers list."    He then allegedly stated that he
"[got] rid of [troublemakers]" and that plaintiff should not
complain to the union about discrimination or FMLA leave because
"all problems remain in house and anybody who goes outside is a
troublemaker."    Id. at ¶ 11.

4

### III. Subsequent Events

On October 6, 2003 (presumably after she returned from her visit to her father), Al allegedly told plaintiff that she could not start her shift until she provided a copy of her father's death certificate to Mela.  Id. at ¶ 12.  Plaintiff produced one the following day, but she was then told that she would not be allowed to return to work until she provided a notarized English translation of the death certificate.  Id. at ¶ 13.

Plaintiff eventually was allowed to return to work but then discovered that an Albanian woman had replaced her while she was away.    Plaintiff  also  learned  that  the  Albanian  woman  was allowed eight hours to complete the same job that plaintiff was required to perform within 7.5 hours.[2]  Id. at ¶ 14.

In  October 2003, during an inspection in which plaintiff and an Albanian woman were both assigned the same work area, Al reprimanded plaintiff because he claimed the area was not clean. Plaintiff  alleges that only she was reprimanded, despite the fact that Al saw the Albanian woman sitting in an office instead of working.   Plaintiff  alleges that when she complained to Al about this, he told the Albanian woman, "[t]his Spanish bitch thinks she's going to do what she wants.  I'm going to make her life miserable and if she says anything else I have orders from

---

[2] Defendant allegedly compensates employees on an hourly basis, id. at ¶ 14, but it is not clear whether the Albanian woman was paid at the same rate as plaintiff.

the office to get rid of her. I can get rid of her for anything. She's an old woman and a troublemaker." Id. at ¶ 15.

During the same month, Al again complained that plaintiff's work area was not properly cleaned. Plaintiff allegedly explained to him that her Albanian coworker refused to clean her portion of the assigned area. Although Al saw that the Albanian woman was not working, he told plaintiff to "mind her own business" and said that the Albanian woman could "do whatever she wants." Al allegedly threatened to issue a written reprimand to plaintiff if the floor was not cleaned when he returned. Id. at ¶ 16.

On March 11, 2005, plaintiff was suspended for three days for poor work performance. She alleges that when giving her the suspension, Al stated to her, "I told you I would get you. We are going to make an example out of you. This is coming from the office. Those were my orders." Id. at ¶ 17. During the same month, Al allegedly admitted to plaintiff that he had been ordered to make her life miserable. Id. at ¶ 18.

On April 13, 2005, plaintiff was suspended for one week for failing to properly clean her worksite. However, defendant failed to suspend plaintiff's "similarly-situated employees who were outside her protected class." In addition, Al allegedly stated to plaintiff that "[y]ou Hispanic people do not know how to clean. My people are perfect." Al also allegedly stated

6

that if plaintiff went to the union she would be fired.   Id. at
¶ 19.   On April 15, 2005, while plaintiff was still serving her
suspension, defendant suspended her again.   Id. at ¶ 20.

On May 5, 2005, Al ordered plaintiff to lift heavy trash
bags.   When she asked him to assign someone else to assist her,
he allegedly refused and threatened to "get your Hispanic ass
out of this building."   Fearful of losing her job, plaintiff
complied, subsequently injuring her hand and foot as a result.
Id. at ¶ 21.

Plaintiff alleges that as a result of her treatment, she
has suffered and continues to suffer a loss of monetary and
other benefits.     She also alleges physical and emotional
damages.   Id. at ¶ 23.

## IV. Collective Bargaining Agreement[3]

Throughout her employment with HMI, plaintiff has been
represented for purposes of collective bargaining by Local 32B-
32J, Service Employees International Union ("Local 32B-32J" or
the "Union").   A collective bargaining agreement ("CBA" or
"Agreement") between HMI and Local 32B-32J is in place which
governs wages, hours, and other terms and conditions.   The CBA

---

[3] The facts in this section, though not included in the
complaint, are drawn from the contents of the CBA, of which we
appropriately take judicial notice.   See Kramer v. Time Warner, Inc.,
937 F.2d 767, 773 (2d Cir. 1991).

7

directly references and requires compliance with the FMLA.[4]   In addition, the CBA requires arbitration of disputes "arising between the parties as to interpretation, application or performance of any part of this Agreement and such other issues as the parties are expressly required to arbitrate . . . under the terms of this Agreement."   Affidavit of Perry S. Heidecker, Esq. dated August 15, 2005 ("Heidecker Aff.") Ex. A at 6.   The CBA also contains an anti-discrimination clause which states that:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, or any other similar laws, rules or regulations.   All such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as the sole and exclusive remedy for violations.

Id. at 41 (emphasis added).

Defendant has moved to dismiss the complaint in its entirety.   For the reasons set forth below, defendant's motion is denied.

---

[4] The Agreement states that "[a]ny Employer who is required by law to comply with the provisions of the Family Medical and Leave Act (FMLA) shall comply with the requirements of said act."   Heidecker Aff. Ex. A at 36.

8

## DISCUSSION

In considering a motion to dismiss, the Court must accept as true all material factual allegations in the complaint. Levy ex rel. Immunogen Inc. v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir. 2001). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (quoting Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)). A motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## I. Waiver of Rights Generally

Defendant argues that plaintiff's complaint should be dismissed because the union-negotiated CBA designates arbitration as the sole and exclusive remedy for any disputes involving the subject matter of plaintiff's claims. As detailed in numerous cases, see, e.g., Fayer v. Town of Middlebury, 258 F.3d 117, 121-22 (2d Cir. 2001), there has been some uncertainty about the enforceability of such provisions in light of two different lines of Supreme Court precedent. For purposes of this discussion, we summarize them briefly below.

The first line of cases involves "the preclusive effect of arbitrations conducted under collective bargaining agreements on subsequent litigation arising out of the same underlying facts." Id. at 121.  This line is represented by Alexander v. Gardner-Denver Co., 415 U.S. 36, 49 (1974), in which the Court held that an individual is not barred from bringing a Title VII action even if, pursuant to a nondiscrimination clause of a collective bargaining agreement, he previously arbitrated a grievance involving the same conduct.

The second line of cases deals with "the enforceability of individually executed predispute arbitration agreements on federal statutory and constitutional claims."  Fayer, 258 F.3d at 122.  This line is represented by Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 27 (1991), in which the Court held that a claim under the Age Discrimination in Employment Act of 1967 (ADEA) could be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration form, thus waiving the plaintiff's right to a federal judicial forum.  There, the Court stated that "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." Gilmer, at 26.

Subsequently, in Wright v. Universal Maritime Svc. Corp., 525 U.S. 70, 72 (1998), the Supreme Court considered "whether a

10

general arbitration clause in a [CBA] requires an employee to use the arbitration procedure for an alleged violation of the Americans with Disabilities Act of 1990 (ADA)." Although the Court ultimately concluded that the employee was not obligated to use the arbitration procedure, it did not explicitly decide whether or not such a union-negotiated waiver of the employee's right to a judicial forum was valid. Id. at 77 ("we find it unnecessary to resolve the question of the validity of a union-negotiated waiver, since it is apparent to us . . . that no such waiver has occurred"). Rather, it held that the waiver in question was not sufficiently clear and unmistakable such that, even assuming such waivers were enforceable, it would be valid. Id. at 80. In reaching its conclusion, the Court acknowledged the tension between the two prior lines of cases but did not resolve it.

Absent more explicit guidance from the Supreme Court, lower courts, including the Second Circuit, have distinguished these two lines of cases by asserting that the second line of cases "deal[s] not with arbitration clauses in collective bargaining agreements but with employees' own agreements to arbitrate specified disputes." Fayer, 258 F.2d at 122; Rogers v. New York University, 220 F.3d 73, 75 (2d Cir. 2000).

In addition, the Second Circuit has since considered the enforceability of an arbitration provision in a union-negotiated

11

CBA.     The Second Circuit concluded that the provision was not enforceable against the plaintiff's claims under the ADA, the FMLA, and New York State and City human rights laws.     Rogers, 220 F.3d at 75 ("The arbitration provision in the instant case, by which employees purport to waive their right to a federal forum with respect to statutory claims, is contained in a union-negotiated CBA   .   .   .   .       [S]uch  provisions  are  not enforceable.").     In reaching this conclusion, the Court stated that "the Gardner-Denver rule is sufficient to decide this case" and noted that "while Wright may have called Gardner-Denver into question, it did not overrule it."   Id.

However, as an alternative rationale, it also affirmed the district court's conclusion that even if such provisions were enforceable as a general matter, the alleged waiver in that case was not sufficiently clear.     Id. at 75-77.     In reaching this conclusion, the Court articulated a two-step analysis of whether a waiver of statutorily conferred rights in a CBA is clear and unmistakable.     Specifically, it held that a waiver in a CBA will be deemed sufficiently clear and unmistakable if either of two conditions is met.     Id. at 76.     "First, a waiver is sufficiently explicit if the arbitration clause contains a provision whereby employees specifically agree to submit all federal causes of action arising out of their employment to arbitration."   Id. "Second, a waiver may be sufficiently clear and unmistakable

12

when the CBA contains an explicit incorporation of the statutory anti-discrimination requirements in addition to a broad and general arbitration clause." Id.

Applying the two rationales of Rogers, we find that the arbitration provision at issue here is not enforceable as to any of plaintiff's statutory claims.

**A. FMLA Claim**

Broadly, the Second Circuit has already held that a union-negotiated arbitration clause in a CBA is unenforceable. See Rogers, 220 F.3d at 75; Fayer, 258 F.3d at 123 n.2 ("In this Circuit, we have reached the question left open by Wright and held that an arbitration clause in a union collective bargaining agreement is not enforceable against an individual employee's ADA and Family and Medical Leave Act claims."); see also Fowler v. Transit Supervisors Org., 96 Civ. 6796 (JGK), 2000 WL 1726687, at *1 (S.D.N.Y. Sept. 6, 2000) (noting that Second Circuit has "expressly held that collective bargaining agreement mandatory arbitration provisions cannot bar union members from bringing federal claims to court"). This binding precedent is sufficient to find that the arbitration clause in this case is unenforceable against plaintiff's FMLA claim. See Rogers, 220 F.3d at 75 (noting that "the Gardner-Denver rule is sufficient to decide this case"); Beljakovic v. Melohn Props., Inc., 04 Civ. 3694 (RJH), 2005 WL 2709174, at *1 (S.D.N.Y. Oct. 17, 2005)

13

(finding that language requiring arbitration was "clear and unequivocal" but concluding that because CBA was negotiated between plaintiff's union and his employer, the arbitration provision was unenforceable).

Moreover, even assuming such an arbitration clause were enforceable, the provision in this case is not sufficiently explicit to waive plaintiff's right to assert her claim under the FMLA in federal court.   The provision in relevant part states that it includes

> claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, or any other similar laws, rules or regulations.

Heidecker Aff. Ex. A at 41 (emphasis added).   Although the provision references both federal and state statutory rights, it does not specifically incorporate claims made under the FMLA and also falls short of "a specific agreement to submit all federal claims to arbitration."[5]   Rogers, 220 F.3d at 76 (emphasis added).

In addition, while the requirement in the CBA to abide by the FMLA may "creat[e] a contractual right that is coextensive

---

[5] We do not consider the reference to "any other similar laws, rules or regulations" to be sufficiently explicit to incorporate the FMLA.   We also note that in light of the fact that the drafters chose to specify certain federal claims, the exclusion of the FMLA is especially significant.

14

with the federal statutory right," doing so does not necessarily "mak[e] compliance with the [federal statute] a contractual commitment that would be subject to the arbitration clause." Wright, 525 U.S. at 79, 81.    In this case, the CBA's FMLA compliance provision and a separate provision for arbitration of disputes "arising between the parties as to interpretation, application or performance of any part of this Agreement and such other issues as the parties are expressly required to arbitrate . . . under the terms of this Agreement,"  Heidecker Aff. Ex. A at 6, are insufficient to constitute a clear waiver. See Rogers, 220 F.3d at 76 (noting that although the CBA expressly provided for FMLA compliance and elsewhere contained a general arbitration clause, it did not thereby make compliance with the FMLA a contractual commitment subject to arbitration). In light of the above, we find that the arbitration provision is unenforceable against plaintiff's FMLA claim, and she is entitled to bring this claim in federal court.    Defendant's motion as to plaintiff's FMLA claim therefore is denied.

### B. State Statutory Claims

Because the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., applies to this case, federal law controls the analysis of whether the arbitration provision is enforceable against

plaintiff's state statutory claims.[6]   See <u>Fletcher v. Kidder,</u>
<u>Peabody & Co.</u>, 81 N.Y.2d 623, 631, 601 N.Y.S.2d 686, 689 (N.Y.
1993) (noting that "where the FAA is applicable, it preempts
State law on the subject of the enforceability of arbitration
clauses").

In the case of plaintiff's state statutory claims, the
waiver contained in the CBA is sufficiently clear.    The
provision explicitly states that "claims made pursuant to . . .
the New York State Human Rights Law[] [and] the New York City
Human Rights Code . . . shall be subject to the grievance and
arbitration procedure (Articles V and VI) as the sole and
exclusive remedy for violations."   Heidecker Aff. Ex. A at 41.

Therefore, we now confront an issue that many courts before
us have been able to avoid.    That is, in addressing plaintiff's
state statutory claims, we must answer the question of whether a
clear and unmistakable union-negotiated waiver is enforceable.
As discussed above, the Supreme Court has not spoken clearly on
this issue.    However, we understand <u>Rogers</u> to hold that such
union-negotiated waivers are unenforceable under the reasoning

---

[6] Neither party disputes that the FAA applies to this case.
Because plaintiff "is an employee in a service industry which affects
commerce, and is not engaged in the transportation industry" we agree.
<u>Rogers v. New York University</u>, 98 Civ. 2089 (WHP), 1999 WL 710777, at
*2 (S.D.N.Y. Sept. 10, 1999), <u>aff'd</u>, 220 F.3d 73 (2d Cir. 2000); <u>see</u>
<u>Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations</u>, 107 F.3d
979, 982 (2d Cir. 1997) ("Since collective bargaining agreements are
contracts entailing transactions in commerce, the bargaining agreement
in the instant case falls within the purview of the [FAA].").

16

of Gardner-Denver. Therefore, in the absence of more explicit
guidance from the Supreme Court, and in light of the Second
Circuit's holding in Rogers that arbitration provisions
contained in a union-negotiated CBA are unenforceable against
statutory claims (including New York State and City human rights
laws), we apply the reasoning of Gardner-Denver and find that
such a waiver is unenforceable.[7] See Rogers, 220 F.3d at 75
("When the arbitration provision has been negotiated by a union
in a CBA, these courts have held that Gardner-Denver applies.
The Second Circuit is no exception."); Beljakovic, 2005 WL
2709174, at *3 ("Simply put, there is no compelling authority
for the proposition that Gilmer overruled Alexander, and until
the Supreme Court clarifies that it has, this Court will apply
the law as it stands." (citations and quotations omitted)); see
also Fowler, 2000 WL 1726687, at *1 ("The Court of Appeals for

_____

[7] We decline to adopt the approach set forth in Fletcher, 81
N.Y.2d at 632, 601 N.Y.S.2d at 690 (applying approach of Gilmer in
case involving union-negotiated waiver because FAA applied to
agreement at issue), which was decided before the Supreme Court's
decision in Wright. Rather, we agree with the majority of courts
applying Wright that the basis for the distinction between Gardner-
Denver and Gilmer was not so much whether or not the FAA applied but
the identity of the party negotiating the waiver. See, e.g., Rogers,
220 F.3d at 75 (noting that "most lower courts have focused on the
party negotiating the waiver of rights").

While some state courts have found such provisions to be
enforceable against state statutory claims, see, e.g., Garcia v.
Bellmarc Property Mgmt., 295 A.D.2d 233, 745 N.Y.S.2d 13 (1st Dep't
2002); Torres v. Four Seasons Hotel of New York, 277 A.D.2d 23, 715
N.Y.S.2d 28 (1st Dep't 2000), they did so based on their interpretation
of the Supreme Court's holding in Wright. Until the Supreme Court
speaks more clearly on this issue, however, we are constrained to
adopt the Second Circuit's holding in Rogers.

17

the Second Circuit, however, has expressly held that collective

bargaining agreement mandatory arbitration provisions cannot bar

union members from bringing federal claims to court").

Defendant's motion to dismiss plaintiff's state statutory

claims therefore is denied.

## CONCLUSION

For the reasons set forth above, defendant's motion to

dismiss is denied.   Counsel are directed to appear for a

conference on March 10, 2006 at 2:30pm.

**SO ORDERED.**

Dated:    New York, New York
          February 22, 2006

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

18

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for Plaintiff
Becky Tung, Esq.
Leeds Morelli & Brown, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514


Counsel for Defendant
Perry S. Heidecker, Esq.
Milman & Heidecker
3000 Marcus Avenue, Suite 3W3
Lake Success, NY 11042